UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JEEVAN MALHOTRA,

     Plaintiff,

v.                                                     Case No.:  2:24-cv-945-SPC-NPM

AJIT KUMAR, AJAY KUMAR,
RAJ KUMAR, RENU KUMAR,
VIJAY KUMAR, and ANAND
KUMAR DHULL,

     Defendants.

                            /

## OPINION AND ORDER

Before the Court is Defendants Ajay, Raj, Renu, and Vijay Kumar's Motion to Dismiss.  (Doc. 68).  Pro se Plaintiff Jeevan Malhotra filed a response in opposition (Doc. 78), so the motion is ripe for review.  For the below reasons, the Court grants the motion.

Put simply, this is a property-interest dispute.  The Court previously discussed the facts at length (Doc. 63), so here is a quick overview.[1]  Plaintiff's father was M. Om. Prakash.  Prakash's sister (Plaintiff's aunt) was Ramesh Kumar.  Ramesh married Defendant Ajit Kumar (Plaintiff's uncle).  Together,

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

Ramesh and Ajit had four children—Defendants Ajay, Raj, Renu, and Vijay Kumar (Plaintiff's cousins, hereinafter referred to as the "Cousin Defendants"). Prakash's and Ramesh's father, Mukundlal Malhotra (Plaintiff's grandfather), owned property in India, including the Moti Mahal Hotel ("Hotel"). This dispute largely concerns Plaintiff's claimed entitlement to an interest in the Hotel.

According to Plaintiff, his father (Prakash) was unemployed and struggled to get by. So out of affection for her brother, Ramesh relinquished her share of their father's estate (including her interest in the Hotel) to Prakash in 1983. Because Ramesh relinquished her share in the Hotel to Plaintiff's father, Plaintiff stood to acquire this interest upon his father's death. But that is not what occurred.

Despite Ramesh's relinquishment to Prakash, she executed a sales deed in 2015 conveying her interest in the Hotel to her cousin, Defendant Anand Kumar Dhull.[2] (Doc. 66-1 at 7–12). Her action hindered Plaintiff's claim to Ramesh's interest in the Hotel. Trying to salvage his interest, Plaintiff insists the 2015 sales deed is invalid. And because Cousin Defendants made various assertions that the sales deed was valid, Plaintiff believes they committed fraud.

---

[2] Plaintiff has yet to serve Dhull, although his request for more time to effect service is pending. (Doc. 84).

Plaintiff also takes issue with Ramesh's testamentary will. In a summary administration proceeding in state court, Cousin Defendants filed affidavits stating Ramesh did not have a will (presumably so her estate would pass intestate). However, they later made contrary assertions indicating Ramesh had a valid will. Plaintiff believes this also constituted fraud.

Based on the foregoing, Plaintiff brings several claims: fraudulent misrepresentation (count I), fraud (count II), civil conspiracy (count III), unjust enrichment (count IV), and sales deed invalid under Florida law (count V). Plaintiff seeks $500,000 in compensatory damages, $2.5 million in punitive damages, and a declaration that the sales deed is invalid and void. (Doc. 66). Cousin Defendants move to dismiss arguing Plaintiff fails to state a claim. (Doc. 68).

Before delving into the merits, the Court addresses the deceased Defendant: Ajit Kumar. On March 25, 2025, Cousin Defendants filed a Suggestion of Death indicating that Ajit passed away. (Docs. 56, 57). Under Federal Rule of Civil Procedure 25(a)(1), if a motion to substitute a deceased party "is not made within 90 days after service of a statement noting the death, the action by or against the decedent *must* be dismissed." (emphasis added). Because no party timely moved to substitute Ajit, the Court directed Plaintiff to show-cause why the Court should not dismiss him. (Doc. 77). Plaintiff responded. (Doc. 78). But his response is inadequate.

Asking the Court not to dismiss Ajit, Plaintiff argues that his dismissal is unwarranted because the other Defendants are Ajit's children, so the interests of his estate are adequately represented here. (Doc. 78 at 2). This is unconvincing. Whether dismissal is necessary is not the standard. Rule 25 states that a court *must* dismiss a deceased defendant if a motion to substitute is not timely filed.[3] Plus, Rule 25 permits substitution of a "proper party." Fed. R. Civ. P. 25(a)(1). It is unclear whether any Cousin Defendant is a "proper party" to represent Ajit's interest. For instance, it is unclear whether any Cousin Defendant is the personal representative, administrator, or a beneficiary of Ajit's estate.

Plaintiff also argues that his claims against Ajit survive his death and can be maintained by his estate. This is true. *See* Fla. Stat. § 46.021 ("No cause of action dies with the person."). But it is also irrelevant. The entire purpose of Rule 25(a)(1) is to provide Plaintiff with 90 days to move to substitute Ajit's estate so he can maintain the action after Ajit's death. He failed to do so and provides no reason for such failure. So the Court dismisses Ajit Kumar from this action.

---

[3] The advisory comments to the Rule provide that a court may extend the 90 days pursuant to Rule 6(b). *See* Fed. R. Civ. P. 25(a)(1) advisory committee's notes to 1963 amendment. But Plaintiff has not requested more time to substitute or argued excusable neglect for the failure to timely do so. *See* Fed. R. Civ. P. 6(b)(1)(B).

Turning now to the merits.  To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570.  A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678.  This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

First up is Plaintiff's fraudulent-representation claim (count I).  In a nutshell, Plaintiff alleges the sales deed was a fraudulent transaction between Ramesh and Dhull effectuated only to harass Plaintiff—*i.e.*, prevent him from receiving Ramesh's relinquished share of the Hotel.  The sales deed was supposedly fraudulent because Ramesh signed blank papers later filled in by Dhull.  Further, the sales deed was not properly witnessed or notarized, and there was no consideration.  All the same, Cousin Defendants purportedly issued various statements falsely asserting that Ramesh in fact sold her share of the Hotel to Dhull.

To state a claim for fraudulent misrepresentation, a plaintiff must allege "(1) a false statement concerning a material fact; (2) the representator's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Tucker v. Evenflo Co.*, No. 6:20-CV-2-PGB-GJK, 2021 WL 8946699, at *2 (M.D. Fla. Nov. 8, 2021) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). Plaintiff fails to allege the second element or satisfy Rule 9(b)'s heightened pleading standard.

Because Plaintiff's claim is based on fraud, it must comply with Rule 9(b)'s heightened pleading requirement. *See* Fed. R. Civ. P. 9(b) (a plaintiff must "state with particularity the circumstances constituting fraud or mistake"). To satisfy this standard, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statements; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud." *Fortson v. Best Rate Funding, Corp.*, 602 F. App'x 479, 483 (11th Cir. 2015) (cleaned up). Plaintiff once again falls short of this standard.

Plaintiff fails to adequately allege Cousin Defendants knew their statements about the sales deed were false. Although Plaintiff broadly alleges Cousin Defendants "knew that Ramesh Kumar signed blank papers" (Doc. 66 ¶ 50), it is unclear how they knew this information. There is no allegation that

they were present or were otherwise informed of this fraudulent scheme. And it is likewise unclear how they were supposed to have known the sales deed was not properly witnessed or notarized. Without any factual support, Plaintiff fails to allege the requisite knowledge element.

That's not all. Plaintiff remains unable to allege what Cousin Defendants gained from this purported fraud. As best the Court can tell, they did not stand to gain from the sale of Ramesh's interest in the Hotel—quite the opposite. If the sale never occurred, Ramesh's interest in the Hotel would arguably pass to Cousin Defendants as part of Ramesh's estate (given they are Ramesh's children). Because Plaintiff cannot state a fraudulent misrepresentation claim after multiple attempts, the Court dismisses count I with prejudice.

Plaintiff's second fraud claim (count II) is also deficient. Plaintiff alleges that during a summary administration proceeding in Florida state court, Cousin Defendants filed affidavits stating Ramesh did not have a will. However, they later made other assertions indicating Ramesh had a valid will. Given this inconsistency, Plaintiff maintains there must be fraud somewhere. But this claim fails for several reasons.

To begin, Plaintiff cannot decide which statements were fraudulent— that Ramesh had a will or that Ramesh did not have a will. For instance, Plaintiff alleges that the false representation was Cousin Defendants'

assertions that Ramesh had a valid will. (Doc. 66 ¶ 70). But he also alleges that because of Cousin Defendants' fraud, he was "under the impression that there is No Will for Ramesh Kumar." (*Id.*). It is unclear what Plaintiff believes to be true. Despite this lack of clarity, the claim fails either way.

To the extent the purported fraud is Cousin Defendants' attestations that a will existed, Plaintiff confirms the validity of this statement by attaching Ramesh's will to the third-amended complaint. (Doc. 66-1 at 16–22). It goes without saying that a true statement cannot support a fraud claim. *See Costanza Y Cruz Medina v. Scottsdale Ins.*, No. 22-23774-CIV, 2023 WL 11801301, at *3 (S.D. Fla. Mar. 7, 2023) ("One allegation of a true statement is insufficient to plausibly support any of the fraud claims."). Plus, even if such assertions were false, it is unclear how this harmed Plaintiff. Plaintiff seems to premise his injury on his inability to challenge the will in the state court proceeding. But if Cousin Defendants falsely stated Ramesh's will existed—meaning there was no will—then there was never a will for Plaintiff to challenge in the first place. So he could not have been harmed by any false statement that a will existed.

On the other hand, if the purported fraud arises from Cousin Defendants' assertions that a will did *not* exist, then these statements are privileged. As alleged, Cousin Defendants submitted affidavits in a summary proceeding in state court stating Ramesh did not have a will. Florida's litigation privilege

"protects 'anything said or written' during a lawsuit so long as it has 'some relation to the proceeding.'" *Esmailzadegan v. Ventura Greens at Emerald Dunes Condo. Ass'n, Inc.*, No. 17-81040-CIV, 2018 WL 3699343, at \*6 (S.D. Fla. Apr. 25, 2018), *report and recommendation adopted*, 2018 WL 3699308 (May 11, 2018) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins.*, 639 So. 2d 606, 608 (Fla. 1994)).  Courts have held this privilege extends to untrue statements in an affidavit.  *Id.* (citing *Coursen v. JP Morgan Chase & Co.*, No. 8:12-CV-690-T-26EAJ, 2013 WL 5437348, at \*8 (M.D. Fla. June 25, 2013), *aff'd sub nom.* 588 F. App'x 882 (11th Cir. 2014)).  Because Cousin Defendants made the statements denying the existence of Ramesh's will during an intestate proceeding, the statements are privileged.

Plaintiff tries to argue the litigation privilege does not shield Cousin Defendants because their purportedly false statements in the summary administration proceeding amounted to fraud on the court.  (Doc. 76 at 10–11). Perhaps.  But if so, Plaintiff should have raised the issue there; he cannot bring a separate fraud action here.  *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1302 (11th Cir. 2003) (explaining the plaintiff could have filed a contempt motion in the underlying litigation as a remedy for misconduct but instead chose to pursue a fraud action in a subsequent litigation, which is barred by the litigation privilege); *Levin,* 639 So. 2d at 608 (explaining the litigation privilege does not leave an injured party without

remedy because the trial court can use its contempt powers). Otherwise, the purported fraud-on-the-court exception would swallow the privilege.

The Court previously advised Plaintiff of these pleading deficiencies. And the fact that Plaintiff is still unable to state a claim, let alone decide which statements were false, is telling. But no matter which way he slices it, count II fails. So the Court dismisses count II with prejudice.[4]

Next up is Plaintiff's civil conspiracy claim (count III). Essentially, he argues that Cousin Defendants conspired to deprive him of his rightful inheritance through various false representations. But given the Court dismisses Plaintiff's fraud claims, his conspiracy claim likewise fails. *See Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) ("[A] claim that is found not to be actionable cannot serve as the basis for a conspiracy claim."). So the Court dismisses count III with prejudice.

In count IV, Plaintiff (for the first time) brings an unjust enrichment claim. Big problem. Plaintiff added this claim to his third-amended complaint without leave of court. Although the Court permitted Plaintiff to file an amended pleading after dismissing his second-amended complaint, such leave was only to rectify the identified pleadings deficiencies, not to add new claims.

---

[4] Cousin Defendants also argue Plaintiff lacks standing to bring this claim. (Doc. 68). Although it is iffy whether Plaintiff alleges enough to satisfy Article III standing, the Court need not reach the issue because the Court dismisses the claim on other grounds.

*See Hooker v. Off. of Pers. Mgmt. & Dep't of Veteran Affs.*, No. 8:20-CV-1248-WFJ-CPT, 2021 WL 372827, at \*3 (M.D. Fla. Feb. 3, 2021) ("The order dismissing the initial complaint with leave to amend does not grant leave to add totally new claims."). What's more, the deadline to amend pleadings had expired by the time Plaintiff filed his third-amended complaint.[5] So his attempt to surreptitiously add the unjust enrichment claim without leave of court and after the amendment deadline is improper, and the Court dismisses count IV. *See Horsman v. Cooney*, No. 2:23-CV-1205-SPC-KCD, 2025 WL 1068790, at \*4 (M.D. Fla. Apr. 8, 2025) (dismissing claims brought in amended complaint following order on motion to dismiss and after deadline to amend pleadings expired).

Finally, the Court turns to Plaintiff's claim seeking to invalidate the 2015 sales deed (count V). Plaintiff asks the Court to invalidate the sales deed under Florida law because: (1) it was executed without consideration, (2) it was not attested by two physically present witnesses, and (3) it was not notarized.

---

[5] Given the unjust-enrichment claim derives from the same facts as the other claims, the Court doubts Plaintiff would have satisfied Rule 16's good-cause to alter the deadline to amend pleadings. *See Allstate Ins. v. Regions Bank*, No. CIV.A. 14-0067-WS-C, 2014 WL 4162264, at \*4 n.6 (S.D. Ala. Aug. 19, 2014) (explaining Rule 16's good-cause standard is not satisfied when the plaintiff knew the facts of the underlying proposed amendment before the deadline).

(Doc. 66 ¶¶ 91–93).  Cousin Defendants argue, however, that Florida law is irrelevant because India law applies.  The Court agrees.[6]

India law governs the sales deed.  Because this is a diversity case, the Court applies Florida's choice-of-law rules.  *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) ("[A] federal court sitting in diversity borrows the forum State's choice-of-law rule.").  When real property is concerned, Florida applies the *lex loci rei sitae* principle, meaning the law of the situs of the real property governs.  *See Beale v. Beale*, 807 So. 2d 797, 798 (Fla. Dist. Ct. App. 2002).  The Hotel—the subject of the sales deed—was in India.  The inquiry ends there.[7]  But if that were not enough, the sales deed is an Indian deed that appears to include conditions required for a valid sales deed under India's law, such as fingerprints and passport-size photographs of the signatories.  (Doc. 66-1 at 7–12).  So India law controls, not Florida's.

Because India law governs the sales deed and count V contends the sales deed fails to meet Florida specifications, the claim fails.  The Court thus dismisses count V.

---

[6] In its prior Order, the Court questioned whether India or Florida law applies to this claim. (Doc. 63 at 14–15).  Nevertheless, Plaintiff decided to double down on his erroneous application of Florida law.

[7] Plaintiff seems to argue India law should not apply because the Hotel was liquidated and is thus no longer real property.  (Doc. 66 ¶ 88; Doc. 76 at 22–23).  Not only does he cite no authority for this proposition, but the Court also fails to see how this alters the analysis.

As discussed above, this is not Plaintiff's first attempt at stating a claim. The Court advised Plaintiff of many of these deficiencies in its prior Order. Because he still fails to state a claim, the Court dismisses this case. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("A district court need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed." (cleaned up)).

Accordingly, it is now

**ORDERED:**

1.  Cousin Defendants' motion to dismiss (Doc. 68) is **GRANTED.**

2.  Plaintiff's third-amended complaint (Doc. 66) is **DISMISSED.**

3.  The Clerk is **DIRECTED** to deny any pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida this August 19, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

13